# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 8, 2026

Lyle W. Cayce
Clerk

No. 24-40472

Paris Thorpe, *as next friend* A.B.,

*Plaintiff—Appellant*,

Darren Boykin,

*Intervenor Plaintiff—Appellant*,

*versus*

Jerrika Weaver; Brent Hobbs; William Scott,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 5:21-CV-106

_____

Before Southwick, Graves, and Wilson, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

After a long run from police on a hot summer day, Darren Boykin died. When officers apprehended him, he complained that he could not breathe, which they attributed to exhaustion. But in fact, Boykin had a condition—sickle cell trait—that made him particularly vulnerable to sudden death from extreme exercise. On the drive to jail, Boykin's condition

No. 24-40472

deteriorated and he lost consciousness. He arrived without a pulse, and resuscitation efforts ultimately failed.

Plaintiffs sued, alleging that three officers were deliberately indifferent to Boykin's medical needs: Brent Hobbs, William Scott, and Jerrika Weaver (the Officers). The district court granted summary judgment on qualified immunity grounds, and plaintiffs appeal. We affirm.

Plaintiffs can show only that Hobbs mistook the symptoms of a more serious condition for exercise exhaustion, and that Scott, who never interacted with Boykin, relied on Hobbs's assessment. This alone cannot sustain plaintiffs' deliberate indifference claims against Hobbs and Scott. But Weaver enjoys qualified immunity—even if she might have learned that Boykin had fallen unconscious. It was not clearly established in 2019 that an officer who observes a detainee lose consciousness during transport to jail must immediately secure aid.

## I. BACKGROUND

### A. After a long run triggered a latent medical condition, Boykin died.

On a hot Texas summer day in 2019, Boykin fled from Texarkana College police officers on foot. They caught him after a half-mile chase. He resisted; they subdued him. Soon, several officers from the Texarkana, Texas Police Department arrived, including Hobbs, Weaver, and later a sergeant, Scott. Boykin had difficulty walking to Weaver's patrol car, so the officers carried him.

Once Boykin was in the car, he complained of being unable to breathe. Hobbs responded by turning up the air conditioning. He attributed Boykin's breathing complaints to breathing hard from intense exercise, and he relayed this assessment to Scott.

Just after Scott arrived, Weaver departed with Boykin for the jail. Over the ten-minute drive, Boykin's condition deteriorated. A few minutes in, Boykin told Weaver that he was "about to pass out," and cried for help. Boykin then flopped into the divider. Weaver reacted to the sound, peeked into the rearview mirror, and offered Boykin "some water up there at the jail." Boykin then seemed to lose consciousness. But Weaver sustained a one-sided conversation. At one point, Weaver looked back at Boykin, who was flopped over and unconscious. As Weaver continued talking, they drove past Wadley Hospital. They arrived at the jail about four minutes later.

When Weaver opened the rear door, she found Boykin unresponsive and pulseless. Weaver then examined him, began resuscitation efforts, and radioed for emergency medical assistance. Even though the paramedics restored Boykin's pulse, he eventually died at Wadley Hospital.

The officers never knew that Boykin had sickle cell trait, an uncommon, red-blood-cell condition. Although generally asymptomatic, sickle cell trait increases the risk of sudden death after extreme exercise. This complication is called Exercise Collapse Associated with Sickle Cell Trait, or ECAST. Boykin's flight from police precipitated an ECAST event, which caused his death.

## B. Boykin's family sued, but the district court granted the Officers summary judgment.

Members of Boykin's family and his estate (plaintiffs) sued the Officers in federal court under 42 U.S.C. § 1983. *Thorpe v. Weaver*, No. 5:21-CV-106, 2023 WL 11796842, at *1 (E.D. Tex. Oct. 20, 2023). Plaintiffs alleged that the Officers were deliberately indifferent to Boykin's serious medical needs. *Id.* After discovery, the district court granted summary judgment. *Thorpe v. Weaver*, No. 5:21-CV-106, 2024 WL 3043372, at *1 (E.D. Tex. June 18, 2024).

## II. Our Review

Plaintiffs appeal the district court's grant of qualified immunity to each Officer. To overcome qualified immunity, plaintiffs must show: "(1) that the [officer] violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citation modified).

We review a grant of summary judgment de novo. *First Am. Bank v. First Am. Transp. Title Ins. Co.*, 585 F.3d 833, 836 (5th Cir. 2009). We affirm if the moving party shows that no genuine dispute of material fact remains, and they are entitled to judgment as a matter of law. *Id.* at 837. "We view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in [their] favor." *Harrison Co. v. A-Z Wholesalers, Inc.*, 44 F.4th 342, 346 (5th Cir. 2022) (citation modified).

When unambiguous "video evidence is available, we view the facts in the light depicted by the video[]." *See Boyd v. McNamara*, 74 F.4th 662, 665–66 (5th Cir. 2023) (citation modified). But "when video evidence is ambiguous or . . . supports a nonmovant's version" we "credit that party's account if" sufficient evidence supports it. *Aguirre v. City of San Antonio*, 995 F.3d 395, 411 (5th Cir. 2021).

## III. Discussion

**A. The deliberate indifference standard requires proof that an official actually inferred a risk of serious harm and disregarded it.**

"The Fourteenth Amendment . . . bars law enforcement from responding to a [pretrial] detainee's serious medical needs with deliberate indifference." *Williams v. City of Yazoo*, 41 F.4th 416, 423–24 (5th Cir. 2022) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). To prevail on a deliberate indifference claim, a detainee must show that an official: (1) knew "facts from which the inference could be drawn that a substantial risk of

No. 24-40472

serious harm exists," (2) that they "actually drew the inference," and (3) "disregarded that risk." *Baldwin v. Dorsey*, 964 F.3d 320, 326 (5th Cir. 2020) (citation modified).[1] "[D]eliberate indifference is an extremely high standard." *Domino v. Tex. Dep't of Crim. Just.*, 239 F.3d 752, 756 (5th Cir. 2001).

## B. Plaintiffs cannot show that Hobbs or Scott actually knew of the risk to Boykin, but a reasonable jury could find that Weaver knew.

Plaintiffs allege that the Officers were deliberately indifferent to Boykin's medical needs "by ignoring [his] complaints and refusing to provide him medical care." There were facts from which a reasonable officer could infer that Boykin's health was at serious risk. But we must resolve whether there is adequate evidence that the Officers actually knew that Boykin's needs were serious.[2]

The actual-knowledge inquiry is "subjective," so "[w]e ask what the officials knew, not what they should have perceived but did not." *Williams*, 41 F.4th at 423 (citation modified). Plaintiffs may show this through direct evidence. *See id.* at 423 n.5. Or through evidence that "the risk was obvious." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006). "We consider each defendant's knowledge and response individually." *Williams*, 41 F.4th at 423.

––––––––––––––––––––

[1] The same standard that governs a prisoner's Eighth Amendment deliberate indifference claim governs a pretrial detainees' Fourteenth Amendment claim. *Baughman v. Hickman*, 935 F.3d 302, 306 (5th Cir. 2019).

[2] The Officers also press various forfeiture arguments, claiming granular inconsistencies with plaintiffs' arguments in the district court and this one. These theories find little support in our caselaw. *See, e.g.*, *Dartez v. Owens-Ill., Inc.*, 910 F.2d 1291, 1294 (5th Cir. 1990) ("[L]iberal pleading . . . rules prevent[] the use of arguably inconsistent pleadings and discovery as admissions.") (quoting *Whatley v. Armstrong World Indus., Inc.*, 861 F.2d 837, 839 (5th Cir. 1988)).

***1. No reasonable jury could find that Hobbs or Scott actually knew of Boykin's medical needs at the arrest scene.***

The most plaintiffs can show is that Hobbs and Scott misconstrued the symptoms of an ECAST event for those of exercise exhaustion. This cannot sustain an inference of actual knowledge.

No evidence shows that any Officer knew that Boykin was having an ECAST event, or even that he was vulnerable to one. *See Thorpe*, 2023 WL 11796842, at *28. So this presents a "symptoms-only scenario," where "officials had to assess the risk to the detainee's health based on symptoms alone." *See Williams*, 41 F.4th at 424. Because law enforcement officers lack a medical professional's training, we afford them "latitude." *Id.* As a result, "[we] have granted qualified immunity when law enforcement misconstrued the symptoms of a serious medical condition for intoxication." *Id.* at 424 (citing *Roberts v. Lessard*, 841 F. App'x 691, 694 (5th Cir. 2021) (per curiam)). And when an officer mistook the symptoms of a serious illness for a mild one. *Id.* (citing *Est. of Cheney v. Collier*, 560 F. App'x 271, 274–75 (5th Cir. 2014) (per curiam) ("[An official's] knowledge of . . . symptoms consistent with the flu or a bad cold" cannot alone sustain an inference of actual knowledge.)).

Hobbs likewise mistook the symptoms of a serious condition for exercise exhaustion. Boykin had just sprinted a half mile on a Texas summer day. With this context, Hobbs viewed Boykin's complaints of being unable to breathe as indicating that he was breathing hard from exhaustion. Boykin was alert, talking, and his chest was rising and falling, which confirmed to Hobbs that Boykin was, in fact, breathing. Hobbs rendered aid consistent with his assessment: he increased the air conditioning.

Of course, Hobbs was wrong. Boykin was having a medical emergency. But no evidence suggests that Hobbs actually knew this, nor were

Boykin's needs obvious enough for a jury to reasonably infer actual knowledge. *Cf. United States v. Gonzales*, 436 F.3d 560, 573–75 (5th Cir. 2006) (upholding actual-knowledge finding where there was evidence that a detainee was lying on the ground with a broken neck, begging for help, and "foaming at the mouth"), *overruled on other grounds by United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir. 2014) (en banc).

Scott had even less reason to know. He was the "on-duty sergeant." When he arrived, Hobbs reported, "[Boykin] says he can't breathe, but you can hear him hollering from the back seat." Weaver told Scott, "He just ran too much." Scott then got into his car and followed Weaver to the jail. Scott was on scene for about a minute, and he never interacted with Boykin. Quite understandably, Scott relied on Hobbs and Weaver's assessment: that Boykin could breathe, but was breathing hard from exhaustion. Without interacting with Boykin further, Scott could not have learned more. Nor does his reliance on his subordinates' benign explanation allow a jury to reasonably infer that Boykin's needs were obvious to Scott.

In this symptoms-only situation, we owe the Officers latitude. The most plaintiffs can show is that Hobbs mistook ECAST symptoms for exercise exhaustion, and that Scott relied on this mistake. No reasonable jury could find that this gave either officer actual knowledge. Hence the qualified immunity analysis for Scott and Hobbs ends, and we affirm summary judgment on the claims against them.

*2. A reasonable jury could find that Weaver discovered Boykin's medical needs.*

But a reasonable jury could find that Weaver discovered Boykin's needs. At the scene, she had the same knowledge as Hobbs and Scott: that Boykin was reporting difficulty breathing, which she too misinterpreted as a reaction to exertion. Just like the others, this is not enough to show her actual

knowledge at the scene. *See Williams*, 41 F.4th at 424. But on the drive to jail, Boykin's condition deteriorated, and he eventually lost consciousness. Because Weaver could observe this deterioration, she could have discovered Boykin's medical needs.

Recall that a few minutes into the drive, Boykin appeared to lose consciousness and stopped responding to Weaver. The rear compartment camera shows Boykin clearly, and his medical distress is obvious; he was unconscious, barely breathing, and his face was twitching. Weaver denies that she discovered Boykin's condition. And the video is ambiguous whether she did, since what she saw from the driver's seat is unclear. With ambiguous video evidence, we must credit plaintiffs' account if sufficient evidence supports it. *See Aguirre*, 995 F.3d at 410–11.

The video evidence here shows that Weaver could have learned that Boykin had fallen unconscious. Several times, Weaver looked back at him. At one point, she glanced at her rearview mirror, seemingly in response to Boykin's silence. She reacted to his condition, looking over her shoulder at him. She then said, "You know you're going to jail either way right?" Less than a minute later, she glanced at the rearview mirror and asked, "Hey, Darren. Are you getting air back there?" When Boykin was silent, she looked back over her shoulder at him again.

From Boykin's obvious distress in the video, Weaver's glances to the rear, and her contemporaneous reactions to this distress, a reasonable jury could infer her actual knowledge. Although a jury might ultimately find otherwise, we cannot do the same without usurping the factfinder's role. While Weaver's demeanor suggests that she was unaware of Boykin's condition, other evidence suggests that she was. This conflicting evidence creates a genuine dispute whether Weaver was deliberately indifferent.

**C. Plaintiffs cannot show that Weaver violated clearly established law.**

Even if Weaver learned of Boykin's distress, we still grant her qualified immunity. At the second stage of the immunity analysis, we "ask[] whether the detainee's right to treatment for serious medical needs was clearly established such that every reasonable official would understand that what [they are] doing violates that right." *Baldwin*, 964 F.3d at 326 (citation modified). A factually indistinguishable case is unnecessary, but "existing precedent must have placed the . . . constitutional question beyond debate." *Id.*

Plaintiffs frame the allegedly violated right too broadly. They claim that all they need show is that Weaver "refused to treat [Boykin], ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Easter*, 467 F.3d at 464. Yet plaintiffs cannot rest on "generalized propositions." *Stevenson v. Tocé*, 113 F.4th 494, 504 (5th Cir. 2024). Instead, they must identify "similar circumstances" in previous cases that established "particular conduct as unlawful." *Id.*

Our framing is consequently narrower: Was it clearly established in August 2019 that an officer who observes a serious threat to a detainee's life during transport to jail must immediately secure aid?

No. Until 2021, our court had not established that "failing to [promptly] call for emergency assistance in response to a serious threat to an inmate's life constitutes deliberate indifference." *Cope v. Cogdill*, 3 F.4th 198, 209 (5th Cir. 2021). It was only in *Cope* that our court held that "watching an inmate attempt suicide and failing to [immediately] call for emergency medical assistance" violated the Constitution. *Id.* at 209–10. Even if *Cope* recognized a duty to intervene in an inmate's serious medical emergency,

No. 24-40472

Boykin died in 2019—two years before *Cope* established this duty. So *Cope* cannot clearly establish Weaver's alleged neglect as unconstitutional.

*Allen* does not show that Weaver deprived Boykin of a clearly established right either. *See Allen v. Hays*, 65 F.4th 736, 747–48 (5th Cir. 2023). There, a police officer allegedly shot a suspect five times, causing him to crash his car into a tree. *Id.* at 742–43. The detainee was "bleeding, moaning, . . . and in obvious and critical need of emergency medical care." *Id.* at 747. The officer delayed six minutes before summoning medical aid. *Id.* For a 2015 injury, this stated a violation of clearly established law. *See id.* at 747–48. But Boykin's needs were not so obviously extreme. Hence *Allen* addressed different circumstances, and it cannot establish Weaver's particular conduct as unlawful.

Plaintiffs' other cases likewise addressed more obvious needs, and more deliberate neglect. For example, in *Nerren*, officers intentionally refused a detainee's requests for medical assistance after a car accident, so he received aid only when a relative took him to hospital after his release the next day. *See Nerren v. Livingston Police Dep't*, 86 F.3d 469, 473–74 (5th Cir. 1996). Here though, Weaver secured aid after only a few minutes. And in *Fielder*, officers ignored a detainee's deteriorating medical condition over three days, while displaying "a cold hearted, casual unwillingness to investigate what [could] be done for a man who is obviously in desperate need of help." *Fielder v. Bosshard*, 590 F.2d 105, 107–08 (5th Cir. 1979). There is little overlap between *Fielder*'s prolonged and knowing neglect and a slight delay in responding to an ambiguous medical condition. *See id.*[3]

---

[3] *Hope v. Pelzer*'s obviousness exception does not relieve plaintiffs of the analogous-case requirement. 536 U.S. 730 (2002). It was obvious in *Hope* that handcuffing a prisoner to a "hitching post" for seven hours, denying him water, and taunting him

No. 24-40472

Simply put, plaintiffs offer no case that clearly established, in 2019, that an officer who observes a serious threat to a detainee's life during transport to jail must immediately secure aid. So they fail to overcome qualified immunity, and Weaver enjoys the immunity as a matter of law. We thus affirm summary judgment on plaintiffs' claim against her.

\* \* \*

For these reasons, we AFFIRM the district court's grant of summary judgment to the Officers.

---

violated the Eighth Amendment. *Id.* at 736–38. Weaver's alleged indifference to Boykin's rights was nowhere near as severe.